UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

COREY BLAKE GOTREAUX           CIVIL ACTION NO. 6:13-CV-03235

VERSUS                         MAGISTRATE JUDGE HANNA

APACHE CORPORATION ET AL.      BY CONSENT OF THE PARTIES

## MEMORANDUM  RULING

Currently pending is the motion for partial summary judgment on the issue of the plaintiff's contributory negligence (Rec. Doc. 157), which was filed by the plaintiff, Corey Blake Gotreaux.  Defendants Apache Corporation, Gulf Resources Management, Inc., and Shamrock Management, LLC opposed the motion. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## BACKGROUND

This is a personal injury lawsuit, in which it is alleged that the plaintiff was injured on December 28, 2012 while being transferred from a vessel to a fixed platform in the Gulf of Mexico.  On that date, the plaintiff was employed by Performance Energy Services, L.L.C. as a rigger.  Mr. Gotreaux had been working on Apache's SP87D platform.  Because there were no living quarters on SP87D, he was ordered to relocate to SP89B,[1] another platform in the South Pass area that was also

---

[1]     Rec. Doc. 157-3 at 5, 7.

owned and operated by Apache.  He traveled from the first platform to the second on board the M/V RANDI KATHERINE, a boat ride that took approximately forty-five minutes.[2]  The vessel is owned by Cheramie Holdings, LLC,[3] and Gulf Resource crewed, operated, and managed the vessel pursuant to a time charter agreement between Gulf Resource and Apache.  During the boat ride, the weather worsened.[4] The vessel's log reflects that the wind was blowing from the southeast at about 25 to 35 knots while the seas were noted to be eight to twelve feet.[5]

Upon arrival at SP89B, the plaintiff and three other men waited for the personnel basket to be lowered to the deck of the vessel so that they could be transferred to the platform.  They then placed their baggage into the basket and attempted to board the basket.  A deckhand allegedly signalled the crane operator to lift the basket.  A wave then crashed over the bulwark, hitting the basket and propelling it toward the side of the vessel.  A second wave quickly followed, and it knocked all four men off the basket.  The plaintiff alleges that he was the closest of

---

[2]     Rec. Doc. 157-3 at 5.

[3]     Cheramie was sued in the main demand, but the claim against Cheramie was voluntarily dismissed.  (Rec. Doc. 85).

[4]     Rec. Doc. 157-3 at 6.

[5]     Rec. Doc. 157-4 at 8.

the four men to the bulwark and consequently took the force of the impact, resulting in bodily injuries for which he now seeks to recover.

## THE PARTIES' CONTENTIONS

In responding to the plaintiffs' complaint, the defendants asserted as a defense that the plaintiff's injuries resulted, in whole or in part, from his own negligence.  In particular, the defendants contend that the plaintiff had stop work authority and could have asserted that authority and prevented the accident from occurring by stopping the basket transfer procedure.  In the instant motion, the plaintiff seeks a ruling from the court establishing that his actions and omissions did not cause or contribute to the accident or his resulting injuries.

## ANALYSIS

### A.    THE STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[6]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[7]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[8]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[9]  All facts and inferences are construed in the light most favorable to the nonmoving party.[10]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

_____

[6]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[7]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[8]     *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]     *Washburn v. Harvey*, 504 F.3d at 508.

[10]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

claim.[11]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[12]

## B.   THE APPLICABLE LAW

The plaintiff's accident occurred on the deck of a vessel while he was a passenger on the vessel being transported from one place to another.  Therefore, the general maritime law governs his claims.  To state a cause of action for negligence under the general maritime law, a plaintiff must prove four elements:  (1) that the defendant owed a duty to the plaintiff to use due care; (2) that the defendant breached that duty; (3) that the plaintiff suffered damages; and (4) that the breach of the duty proximately caused the plaintiff's injuries.[13]  "[A] party's negligence is actionable only if it is a 'legal cause' of the plaintiff's injuries," which "is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury."[14] Additionally, the comparative negligence doctrine of general maritime law "bars an

---

[11]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[12]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[13]      See, e.g., *Ates v. B & D Contracting, Inc.*, 487 Fed. App'x 201, 204 (5th Cir. 2012); *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991); *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447, 1449 (5th Cir. 1989).

[14]      *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992) (internal quotation marks and citations omitted).

injured party from recovering for damages sustained as a result of his own fault."[15]

If more than one party is responsible, liability is apportioned on the basis of fault.[16]

The defendant has the burden of proving that the plaintiff was contributorily

negligent and that such negligence was the proximate cause in producing his injury.[17]

## C.   GENUINELY DISPUTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT ON THE ISSUE OF THE PLAINTIFF'S COMPARATIVE FAULT

The parties have framed the issues concerning the plaintiff's comparative fault

as (a) whether Mr. Gotreaux knew that he had stop work authority and, therefore,

could have stopped the basket transfer because of the bad weather, and (b) whether

he acted reasonably in failing to exercise stop work authority under the circumstances

presented on the day of the accident.  The plaintiff presented evidence that he was a

young, inexperienced offshore worker who did not comprehend the risk of proceeding

with the basket transfer under the weather conditions, did not know that he could

have stopped the basket transfer, and deferred to more experienced workers with

regard to his safety.

---

[15]      *Boudreaux v. United States*, 280 F.3d 461, 466 (5th Cir. 2002).

[16]      *Boudreaux v. United States*, 280 F.3d at 466.

[17]      *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989) aff'd sub nom. *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

According to his deposition testimony, Mr. Gotreaux had been employed by Performance for only about seven months at the time of the accident[18] and had gone offshore only about five times.[19]  He estimated that he had been transferred from a vessel to a platform or vice versa about ten times.[20]  He testified that he had been trained only by video on how to board a personnel basket.[21]  He does not recall being included in a Job Safety Analysis ("JSA") regarding this particular personnel transfer.[22]  He stated that he had never previously been offshore in weather as bad as that of the day of the accident.[23]  Despite that, however, he testified that he did not give any thought to whether the basket transfer procedure might be unsafe in such weather.[24]  He also testified that he was not trained with regard to stop work authority, stating that he had never even heard that term before being asked about it during the deposition.[25]   He claims that he relied on the experience of the other, more

---

[18]     Rec. Doc. 157-3 at 2.

[19]     Rec. Doc. 157-3 at 5.

[20]     Rec. Doc. 157-3 at 5.

[21]     Rec. Doc. 157-3 at 3.

[22]     Rec. Doc. 182-1 at 7.

[23]     Rec. Doc. 157-3 at 6.

[24]     Rec. Doc. 157-3 at 9.

[25]     Rec. Doc. 157-3 at 4.

experienced men on the vessel, and because they decided to go ahead with the personnel transfer, he did not object or attempt to stop the procedure.[26]

Johnnie C. Hickman, the vessel's captain, testified at his deposition, however, that before an attempt to lift the personnel basket from the vessel's deck was made, he announced on the loud speaker that anyone who did not want to go through with the basket transfer could stop the operation.[27]  He said his exact words were that if "[t]hey didn't like it, we'd shut it down."[28]  Thus, regardless of whether Mr. Gotreaux had been trained with regard to stop work authority, the defendants contend that Captain Hickman expressly gave Mr. Gotreaux an opportunity to make a decision about his personal safety and to avoid participating in the transfer if he felt that was prudent.  This contradicts Mr. Gotreaux's testimony that he solely relied on more experienced men to determine whether it was safe to proceed and that those other men indicated that the procedure could be accomplished safely.  Furthermore, one of Mr. Gotreaux's identification cards indicates that he was trained with regard to stop work authority.  On the card, directly beneath his photograph, in capital letters and underlined, are the words:  "STOP WORK AUTHORITY."  Beneath that, again in

---

[26]     Rec. Doc. 157-3 at 10, 12.

[27]     Rec. Doc. 182-2 at 1.

[28]     Rec. Doc. 182-2 at 1.

-8-

all capital letters are the words:  "IT IS YOUR RESPONSIBILITY & YOU HAVE THE AUTHORITY!"[29]

The conflicting evidence demonstrates that a genuinely disputed issue of material fact exists regarding whether Mr. Gotreaux's acts or omissions played a part in causing the accident.  There is a dispute as to whether he was trained with regard to stop work authority; consequently there is a dispute as to whether he knew that he could have stopped the basket transfer because of the poor weather conditions. Furthermore, Mr. Gotreaux testified that he relied on the more experienced workers around him to protect him from the adverse weather conditions, and those men indicated that it was safe for the transfer to take place,[30] which conflicts with Captain Hickman's testimony that he expressly gave Mr. Gotreaux an opportunity to avoid the basket transfer.

Two other men who were present at the time of the attempted personnel transfer, person-in-charge Joel Averett and crane operator Lance Martin, testified at their depositions that the men getting on the personnel basket, including the plaintiff, loaded the basket improperly and too slowly, subjecting them to an increased safety

---

[29]     Rec. Doc. 182-3.

[30]     Rec. Doc. 157-3 at 12.

risk.[31]  Mr. Averett also criticized Mr. Gotreaux for hanging onto the basket after the wave came over the vessel.[32]  This testimony suggests that Mr. Gotreaux's actions and omissions may have contributed to his injuries.

Thus, there are genuinely disputed factual issues that preclude summary judgment in Mr. Gotreaux's favor with regard to the issue of his comparative fault.

## CONCLUSION

Having found that genuine issues of material fact exist concerning the plaintiff's role in the accident,

IT IS ORDERED that the plaintiff's motion for partial summary judgment on the issue of his contributory negligence (Rec. Doc. 157) is DENIED.

Signed at Lafayette, Louisiana, this 11th day of September 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[31]    Rec. Doc. 183-2 at 5-6; Rec. Doc. 183-8 at 6, 8-14.

[32]    Rec. Doc. 183-3 at 7-8.